### THE MAHANOY.

### Petition of LEHIGH VALLEY TRANSP. CO.

(Circuit Court of Appeals, Second Circuit. May 18, 1921.)

#### No. 171.

1. Towage ⬅11(9)—Tug held at fault for manner of towing barge with open hatchways in a gale.

    A tug, which started with a tow from Jersey City bound for destinations in the East River when a gale of wind was blowing, was at fault for turning into the East River when the hawser boat on the windward side had no hatchway covers, as a result of which she shipped water and sank.

2. Shipping ⬅209(3)—Owner of sunken vessel held to have done all that was possible to buoy the wreck.

    On petition by the owners of a tug to limit liability to other vessels injured by collision with a barge sunk through the tug's fault, evidence held to show that the owner of the barge, whose statutory duty it

was to buoy the wreck, under Act March 3, 1899, § 15 (Comp. St. § 9920), did all that he possibly could under the circumstances,. and was not liable.

**3. Navigable waters ☞26(3)—Owner of obstruction intentionally placed in channel without warning is liable to vessels striking it.**

The owner of an obstruction deliberately placed in a navigable channel without any warning thereof being given is responsible to vessels injured thereby while themselves exercising due care.

**4. Shipping ☞209(3)—Evidence held not to show want of care by tug to protect vessels from sunken tow.**

On petition to limit liability of owners of a tug whose tow sank in the East River during a gale, because of the tug's fault, evidence *held* to show that the tug's master had no reason to believe the barge. which sank in 30 feet of water, would injure another tug drawing only 7 feet of water, as it did, because the barge's stern was only a few feet below the surface, so that the tug, which was at fault, was not liable for injuries resulting from the sinking of the other tug.

Appeal from the District Court of the United States for the Southern District of New York.

Petition by the Lehigh Valley Transportation Company, as owner of the steam tug Mahanoy, for limitation of liability and denying all responsibility. From a decree permitting the limitation of liability, but allowing six claims against the tug, the petitioner appeals. Decree modified, by denying recovery on two of the claims.

Harrington, Bigham & Englar, of New York City (Vine H. Smith, of New York City, of counsel), for appellant.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for Thomas Bulger.

Lewis C. Boehm, of New York City (Charles E. Wythe, of New York City, of counsel), for Harold D. Boehm.

Mark Ash, Chauncey I. Clark, E. W. Leavenworth and J. E. Morrissey, all of New York City, for various claimants.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. The Lehigh Valley Transportation Company, owner of the tug Mahanoy, filed this libel, asking to limit its liability for claims arising out of the following circumstances and at the same time denying all responsibility:

February 26, 1918, at 6:25 a. m., the tug started with eight coal-laden boats, in two tiers of three each and two in the third tier, from the Packer dock, Jersey City, bound for destinations in the East River. The last of the ebb tide was running in the North River and the first of the flood in the East River. Warnings of a southwest storm moving eastward had been displayed since 3 p. m. of the 25th. Between 6 and 7 a. m. of the 26th the wind blew at the rate of 62 miles an hour, which is a whole gale No. 10 of the Beaufort scale, with a maximum velocity at 6:29 a. m. of 70 miles. As the tug rounded on a starboard helm into the East River, the starboard hawser boat Annie Bulger, which had no hatch covers on, having the wind on her starboard side, began to ship water, which caused her to sink at a point estimated to be about 1,000 feet off the Battery in 30 feet of water. She went down bow first, her stern being raised until she was entirely submerged; but there was

nothing to indicate, what proved to be the fact, that the stern remained but a few feet below the surface of the water.

The boat Burns Bros. No. 21, immediately behind the Bulger, broke loose, and the tug Mutual came to her rescue, and in making fast pulled out a cleat upon her port side. Eventually she towed the boat, together with the ferryboat Griswold tandem back to the Jersey side of the river. The Mahanoy got out another hawser to another boat, and, proceeding with her tow, tied it up at Eleventh street, East River, at about 8:30 a. m. Returning, the tug passed the Battery light at about 10 a. m.

The master of the Bulger, as soon as he landed, went to his owner's office, arriving a little before 10, and went from there with his owner to his attorney's office, who at once called up the Moran Towing & Transportation Company and then the Merritt & Chapman Derrick & Wrecking Company on the telephone, neither of which would agree to go and sweep for the wreck until the weather conditions improved. Application was then made to the United States Lighthouse Board, which at 11 o'clock agreed to send a tug to sweep for the wreck.

At about noon the tug St. Patrick, drawing only 7 feet of water, on her way into the East River, ran afoul of the wreck, striking it so violently that she sank almost immediately, and the master of the English steamer Purvis Castle, Capt. Turnbull, who was a passenger, was drowned. The wind continued to blow even harder from the time the Bulger sank until 1 o'clock p. m.

Claims were filed as follows, all of which Judge Learned Hand allowed at the amounts fixed by the Commissioner, but permitting the libelant to limit its liability:

(1) By Thomas Bulger, for damages due to the sinking of the Annie Bulger, and Capt. Bulger, for loss of effects, $12,356.91.

(2) By Burns Bros., for damages to its barge Burns Bros. No. 21, caused by the original disaster, or by the tug Mutual in making fast to the No. 21 after she broke loose from the Mahanoy's tow, $598.09.

(3) By Timmins, for the value of the services rendered by the tug Mutual to the Burns Bros. No. 21, $900.

(4) By the United States Director General of Railroads, for damage sustained by the D., L. & W. steam lighter Syracuse, as a result of its collision with the submerged barge, Annie Bulger, $3,832.47.

(5) By Shamrock Towing Company, as owner of the steam tug St. Patrick, for the damage to that tug, resulting from its collision with the submerged barge Annie Bulger, $11,322.32.

(6) By the estate of J. Turnbull, who was aboard the tug St. Patrick when it struck the submerged barge, for damages due to his death, $22,426.66.

[1] We agree with the court below in permitting the Transportation Company to limit its liability, and in finding it liable for starting to round the Battery in the weather then prevailing with a starboard hawser boat having no hatch covers in place. For the loss of that boat and cargo, and for the salvage paid by the Burns Bros. No. 21 to the tug Mutual, and for the expense of repairing the damage she sustained in the salvage operation, the libelant was clearly liable.

[2] We also agree with him that the owner of the Bulger whose

statutory duty it was to buoy the wreck (section 15, Act March 3, 1899, 30 Stat. 1152 [Comp. St. § 9920]), did all he possibly could under the circumstances and is not liable.

[3] Whether the Transportation Company is further responsible for the sinking of the St. Patrick and the death of Capt. Turnbull and injury to the Syracuse is a more difficult question. Of course in case of an obstruction deliberately placed in a navigable channel without giving any warning of it the owners will be responsible to owners of vessels injured thereby while themselves exercising due care. Authorities to that effect are cited and approved.

[4] The District Judge held that, because the Transportation Company was responsible for the original sinking it was responsible for all subsequent accidents, no new and independent cause having intervened. To this the libelant replies that the company is liable only for the fairly to be expected consequences of its negligence, and that a barge, whose sides measured but 15 feet, in 30 feet of water, could not have been expected to obstruct a tug drawing only 7 feet. The difficulty lies in applying these well-established principles to the facts of the case. Admitting that after the barge sank, for which sinking it was responsible to the owners, the Transportation Company was under the additional duty to the owners of the St. Patrick, of the steam lighter Syracuse, and to Capt. J. Turnbull of exercising ordinary and reasonable care to protect them from injury, wherein did it fail to perform its duty?

We cannot say that it should have sent a tug to sweep for the wreck in weather which prevented the professional wreckers and the United States Lighthouse Board from doing so. But it is suggested that it might have sent a tug to stand by, which would have warned the St. Patrick and the Syracuse. Such a tug would not have known and could not have told the St. Patrick and the Syracuse where the wreck was lying, nor the very singular position it had taken. Indeed, if a tug had been there, warning might not have been thought necessary to a tug drawing as little water as the St. Patrick did. Upon the whole, we think the Transportation Company was not at fault for want of exercising due and ordinary care, and that the claims of the owners of the St. Patrick and of the owners of the Syracuse and of the administrator of H. Turnbull, deceased, should have been dismissed by the court below.

The decree, to be so modified, without costs of either court against either of these claimants, is affirmed.